IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSE ANGEL TORRES-<br>GUARDADO,<br><br>Defendant. | CR 07–22–BLG–SPW<br><br><br>ORDER |

On December 5, 2024, Defendant Jose Angel Torres-Guardado filed a pro se motion under 18 U.S.C. § 3582(c)(1)(A) seeking to reduce his 327-month federal drug sentence.[1] (Doc. 127; *see* Doc. 48 (Judg.).) The government did not respond. Torres-Guardado's projected release date is March 11, 2031. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed January 20, 2025). For the reasons stated below, Torres-Guardado's motion is denied.

---

[1] This is Torres-Guardado's third motion for compassionate release. His first was premised on COVID-19 and denied in April 2021 on procedural grounds. (Doc. 106.) He was appointed counsel for his second motion, which was based on a nonretroactive Guideline amendment and denied in June 2024. (Doc. 125.) Because Torres-Guardado received appointed counsel on his most recent motion, counsel was not appointed on this successive motion.

1

## ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).

Here, Torres-Guardado argues that he has shown extraordinary and compelling reasons for a sentence reduction on a wide range of grounds, extending from poor prison conditions exacerbated by COVID-19 and the failing war on drugs to the specific facts underlying his career offender enhancement. Ultimately, even if Torres-Guardado could show extraordinary and compelling reasons for a sentence reduction, such a reduction is not warranted by the § 3553(a) factors. Accordingly, his motion is denied.

### I.   Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of

the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Torres-Guardado indicates that he made a request to the warden of USP Hazelton more than thirty days before filing the present motion and did not receive a response. (*See* Doc. 127 at 12, 47.) It therefore appears that he has exhausted his administrative remedies as required by statute.

## II. Extraordinary and Compelling Reasons

Torres-Guardado proffers a wide range of reasons why he believes a sentence reduction is warranted. While the First Step Act does not define "extraordinary and compelling reasons," the Sentencing Guidelines include policy statements outlining specific requirements. *See* USSG §1B1.13. Most of the reasons presented by Torres-Guardado are not enumerated therein. To the extent others may fall within an enumerated reason, Torres-Guardado falls short of showing his situation is of the degree required to qualify for relief.

### A. General Prison Conditions and Mass Incarceration

Torres-Guardado first argues that the COVID-19 pandemic exposed the dangers of overcrowded prisons, creating collective conditions of confinement that made his sentence worse than anticipated. (*See* Doc. 127 at 3–4, 32.) He further argues that mass incarceration resulting from the war of drugs has done nothing to improve society or help rehabilitate those engaged in criminal conduct. (*Id.* at 4–5.) While these issues arguably speak to some of the broader policy decisions

underlying the passage of the First Step Act, courts "have consistently concluded that general conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release." *United States v. Pigott*, 2023 WL 8020794, at *3 (W.D. Wash. Nov. 20, 2023) (internal quotation marks omitted) (collecting cases). Accordingly, Torres-Guardado's generalized claims do not present an extraordinary and compelling reason for early release.

## B.  Career Offender Status

. Torres-Guardado further argues that he should not have been designated a career offender under the law as it stood at the time he was sentenced in 2007. This argument is likely premised on the fact that this Court previously determined that Torres-Guardado would not qualify as a career offender under the current Guidelines but that such a change did not qualify as an extraordinary and compelling reason under § 1B1.13(b)(6) because it was based on a nonretroactive Guideline amendment. (*See* Doc. 125.) Thus, Torres-Guardado seeks to establish that his career offender designation has always been incorrect. However, a collateral attack on a mistake purported to have occurred at the time of sentencing sounds in habeas, not compassionate release. *See United States v. Hart*, 2024 WL 3974230, at *4 (E.D. Va. Aug. 28, 2024) (explaining the difference between a collateral attack and a request for compassionate release based on a subsequent

4

change in law). The First Step Act and the Guidelines were intended to provide relief if an intervening change in law would warrant a substantially shorter term of imprisonment; they are not a new avenue for attacking the validity of an underlying sentence. *See United States v. Davis*, 99 F.4th 647, 656 (4th Cir. 2024) ("[A] defendant cannot challenge the validity of a conviction or sentence in a compassionate release motion."). Accordingly, Torres-Guardado's collateral attack on his career offender designation does not present an extraordinary and compelling reason for early release.[2]

### C.  Age and Health

Torres-Guardado further argues that he is over fifty years old and has health issues, such as "moderate to severe asthma, chest issues (ost[e]ochondritis, left parasternal border)." (Doc. 127 at 18–19.) He also states that he has mental health issues such as schizophrenia and panic disorder, (*id.* at 19), and that he has not been able to receive adequate emergency care insofar as he has not been provided with appropriate asthma medication, (*id.* at 20).

To the extent Torres-Guardado is implying that he has not received adequate medical care, such a claim challenges the conditions of his confinement and is not a proper ground for compassionate release. *See United States v. Lavan*, 2024 WL

---

[2] Notably, Torres-Guardado unsuccessfully filed both a direct appeal and a habeas motion under 28 U.S.C. § 2255. (*See* Docs. 57, 67, 76 (denials).)

872983, at *2 (E.D. Cal. Feb. 29, 2024) (noting that challenges to conditions of confinement are "properly brought in a habeas petition or a direct civil claim, not via compassionate release"). To the extent he alleges a medical condition warranting early release, he does not qualify under the Guidelines. The Guidelines state that the age and medical circumstances of a defendant can qualify as extraordinary and compelling in specific situations. For example, if a defendant has a terminal illness, §1B1.13(b)(1)(A); suffers from a serious medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," §1B1.13(b)(1)(B); "requires long-term or specialized care that is not being provided," §1B1.13(b)(1)(C); is part of an at-risk population threatened by a current public health crisis, §1B1.13(b)(1)(D); or is "at least 65 years old," "has served at least 10 years or 75 percent of his or her term of imprisonment," and has deteriorating health, §1B1.13(b)(2). None of the health issued identified by Torres-Guardado meet any of these requirements. Accordingly, Torres-Guardado's age and medical conditions do not present an extraordinary and compelling reason for early release.

**D. Collective Considerations**

Finally, Torres-Guardado argues that even if each of the above alone is insufficient to qualify as an extraordinary and compelling reason for a sentence

reduction, collectively, these issues warrant relief. Arguably this contention fits under §1B1.13(b)(5)'s catchall "other reasons" provision, which allows for the consideration of unenumerated circumstances or collection of circumstances of a similar "gravity" to those enumerated in the Guidelines. But even under this broad standard, Torres-Guardado fails to show anything uniquely extraordinary or compelling about his condition or his confinement.

### E. Conclusion

Based on the foregoing, Torres-Guardado has failed to present an extraordinary and compelling reason for a sentence reduction. Even if he did, however, such a reduction is not warranted under the § 3553(a) factors as discussed below.

### III. Section 3553(a) Factors

Any sentence reduction must also comport with the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range

and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6). These factors do not support a sentence reduction here.

Torres-Guardado was involved in a conspiracy selling methamphetamine in and around Billings, Montana. (*See* PSR ¶¶ 8–13.) Following several controlled buys, he was ultimately held responsible for 990.8 grams of methamphetamine. (PSR ¶ 13.) At one of the buys, he was also reported to have been carrying a firearm. (PSR ¶ 12.) While the attributed drug amount would generally have resulted in a base offense level of 32, *see* §2D1.1(c)(4) (2006 Manual), he was designated a career offender under §4B1.1 based on two previous convictions: a 1993 California robbery conviction, (PSR ¶ 30), and a 1999 Colorado attempted assault conviction, (PSR ¶ 31). (*See* PSR ¶ 26.) While that same career offender designation mandated a criminal history category of VI, (PSR ¶ 41), Torres-Guardado's calculated criminal history score was 24, which would have resulted in a category VI finding regardless, (PSR ¶ 40). Accordingly, with a criminal history category VI, (PSR ¶¶ 40, 41), and a total offense level of 34, (PSR ¶ 27), Torres-Guardado's advisory Guideline range was 262 to 327 months, (PSR ¶ 63). He ultimately received a sentence of 327 months. (*See* Doc. 48 at 2.)

As recognized by Torres-Guardado, this lengthy prison sentence was primarily the result of his criminal history. By the time he was 32, Torres-

Guardado had felony convictions for burglary, assault with a deadly weapon, robbery, criminal attempt to commit second degree assault, exportation of a stolen vehicle, second degree assault, petty theft, and criminal impersonation for benefit. (PSR ¶¶ 28–31, 33, 35, 37–38.) He also had several misdemeanors, including violation of a restraining order, criminal mischief, and third-degree assault. (PSR ¶¶ 32, 34, 36.) At sentencing, the Court noted: "The defendant's arrest record is perhaps the highest - - it's at least one of the highest this Court has ever seen in terms of criminal history points." (Doc. 55 at 9.)

Torres-Guardado argues that while he committed a serious offense, it was not violent, and he took responsibility by pleading guilty. (Doc. 127 at 36–37.) He also indicates that while he has had some infractions while in custody, he participates in programs and has maintained employment. (*Id.* at 31, 34.) These facts, however, do not support a shift in one direction or the other as it relates to Torres-Guardado's sentence. To the contrary, they show that while certain facts could weigh in favor of a shorter sentence, there are equally important facts that justify his existing sentence. While Torres-Guardado is correct that his advancing age makes him statistically less likely to recidivate or engage in criminal conduct, *see generally* U.S. Sent'g Comm'n, The Effects of Aging on Recidivism Among Federal Offenders (Dec. 2017), that alone is insufficient to warrant a sentence reduction. Torres-Guardado's other arguments focus on matters that were before

the Court, and therefore considered, at the time of sentencing. For example, he argues that his criminal history is overstated because of his juvenile offenses and that research shows that juveniles should be considered to have diminished culpability. However, only two of his prior felonies were juvenile adjudications, (*see* PSR ¶¶ 28–29), and that fact was known at the time of sentencing. The sentencing court was also aware that Torres-Guardado would face an immigration detainer upon release. (*See* Doc. 55 at 10 ("Perhaps the most striking thing about [Torres-Guardado's] criminal history score of 24 is that this defendant is an illegal alien, and all of these criminal history points, of course, have been accumulated in the United States while he's held that status, and how that has occurred is beyond me. It is simply hard to believe.").)

Ultimately, reducing Torres-Guardado's sentence based on the current record would denigrate the seriousness of his crimes and undermine respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

## CONCLUSION

IT IS ORDERED that Torres-Guardado's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 127) is DENIED.

DATED this 3rd day of February, 2025.

Susan P. Watters, District Judge
United States District Court